**Jack A. ARTHUR, Jr., et al.**

v.

**George FRY.**

**Civ. A. No. 6536.**

United States District Court
E. D. Tennessee, N. D.

May 16, 1969.

See also D.C., 300 F.Supp. 620.

Earl R. Hendry, Hendry & Sykes, Gatlinburg, Tenn., Henry F. Swann, Atty. Gen. of the Second Judicial Circuit of Tennessee, Dandridge, Tenn., for plaintiffs.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Plaintiffs, five residents of Sevier County, Tennessee, filed suit for injunction in the state Chancery Court, naming as the defendant George Fry, individually and in his capacity as Superintendent of the Great Smoky Mountain National Park. The action was removed to this Court pursuant to 28 U.S.C. § 1442 on the ground that the defendant was sued for actions taken under color of his office.

Plaintiffs seek to enjoin Fry from enforcing a regulation which prohibits the operation of commercial vehicles inside the Park. Defendant claims that the action is barred by the doctrine of sovereign immunity and has moved that the Court dismiss the suit.

The regulation in question closed to commercial vehicles United States Highway No. 441, which was formerly old State Highway No. 71 that crosses the Park between Gatlinburg, Tennessee and Cherokee, North Carolina, and State Highway 73. Both were constructed by the state or county government. In June 1951 the State of Tennessee deeded the highways to the United States subject to restrictions and reservations. The deed and the statute authorizing the transfer provided that the federal government should not have the right to levy any toll or license fee for the use of the two roads, except that it could regulate the use of commercial vehicles weighing over one and one-half tons during the daytime.

By Act of March 15, 1963, Chapter 163 of Public Acts, Tennessee provided for the eventual cessation of the reserved rights to the United States. The Act stated in relevant part the following:

"* * * the State of Tennessee consents to the United States prohibiting the use by commercial vehicles of U. S. Highway 441 and Tennessee Highway No. 73 west of Gatlinburg, Tennessee, within the Great Smoky Mountains National Park *when* Interstate Route *I-40 is completed* from near Newport, Tennessee, *to U. S. Highway No. 19 near Waynesville,* North Carolina." (Emphasis added)

Plaintiffs contend that the state's reserved rights have not been dissolved because the condition of completion of I-40 has not occurred. A hearing was conducted on plaintiffs' application for injunctive relief. The evidence established that I-40 is completed and open to traffic from near Newport Tennessee to Cove Creek, North Carolina, some eleven miles from Waynesville. A state road connects the temporary end of I-40 to U. S. Highway 19. Although the Interstate never actually intersects U. S. 19 near Waynesville, plaintiffs say that the statute contemplated the completion of I-40 to an interchange east of Waynesville which connects to U. S. 19 by a road of about .9 miles in length. That section of the highway is not expected to be finished for several years.

Superintendent Fry interpreted the statute as ceding Tennessee's reserved rights upon completion to the present extent, and he ordered highways in the Park closed to commercial vehicles. His action was in compliance with the regulations of the Secretary of the Interior which provide in part, 36 C.F.R. § 5.6(b), the following:

"The use of government roads within park areas by commercial vehicles, when such use is in no way connected with the operation of the park area, is prohibited, except that in emergencies the Superintendent may grant permission to use park roads."

Plaintiffs claim special injury because the order has hurt established business relationships between plaintiffs in Gatlinburg and persons in Cherokee, North Carolina. When plaintiffs go to Chero-

kee on business, they must follow a route around the Park which is more than twice as long as the trip by way of U. S. 441 across the Park.

■ In the absence of the government's consent to be sued, this action must be dismissed for lack of jurisdiction if the suit is actually a suit against the United States which does not fall within one of the exceptions to the general principle of immunity. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

■ Although the action is nominally against George Fry, a suit is in legal effect against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration" or "if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). The effect of this action if successful would be to interfere with the government's administration of the Park and to restrain the government from executing the policy of the government as expressed by the Secretary of the Interior. The Court must conclude that the action is one against the sovereign. Cf. Gardner v. Harris, M.D., 391 F.2d 885 (C.A.5, 1968) and Andrews v. White, 121 F.Supp. 570 (E.D.Tenn., N.D., 1954).

■ Concerning suits for injunctive relief, the Supreme Court has recognized only two classes of cases which are exemptions to the doctrine of sovereign immunity. A suit for specific relief against a government official may be maintained (1) when the official's actions are beyond the limits of his statutory authority or (2) when, although acting within his statutory powers, the powers themselves or the manner in which they are exercised are unconstitutional. Larson v. Domestic & Foreign Corp., supra; Dugan v. Rank, supra.

Plaintiffs strongly contend that George Fry acted outside his statutory authority by closing the road to all commercial vehicles. Their position is that Fry did not have the authority to make a decision on the matter and that he did not have the authority to make the decision which he made.

■ Congress has granted broad powers to the Secretary of the Interior to control and regulate the lands in the National Park System. 16 U.S.C. § 3; 16 U.S.C. § 403h-3. On their face these statutes authorize the Secretary and his agents to regulate traffic within the parks. See Robbins v. United States, 284 F. 39 (C.A.10, 1922).

■ Plaintiffs further contend that the authority to regulate extends only over those lands within the park system and that the Tennessee statute of cession to the government reserved a property right which is not subject to federal regulation as park property. The highways have been ceded to the United States and are park lands even though certain rights were reserved by the grantor. That Fry arguably violated those reserved rights does not deprive his acts of their statutory authority. Larson v. Domestic & Foreign Corp., supra; Dugan v. Rank, supra; Gardner v. Harris, supra; Switzerland Company v. Udall, 337 F.2d 56 (C.A.4, 1964); Andrews v. White, supra. In apparent conflict with that rule is the decision of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927.

The *Colorado* opinion was based on the idea that the broad statutory grant of authority to the Secretary of the Interior should not be interpreted as including the authority to violate the state's reserved rights. The *Larson* and subsequent decisions have undermined the *Colorado* case insofar as it was based on the principle that statutory authority would not be interpreted to allow wrongful disregard of property rights. The Supreme Court stated in *Larson*, supra, 337 U.S. at page 695, 69 S.Ct. at page 1464, the following:

"We hold that if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be re-

garded as the actions of a private principal under the normal rules of agency. A Government officer is not thereby necessarily immunized from liability, if his action is such that a liability would be imposed by the general law of torts. *But the action itself cannot be enjoined or directed, since it is also the action of the sovereign."* (Emphasis added)

■ *Larson* makes it equally clear that if the official of the government has the authority to make a decision, his action in executing the decision may not be enjoined merely because it was incorrect as to law or fact. Superintendent Fry's determination that the condition of the I–40 completion had occurred may or may not have been erroneous, but it was a determination which in the administration of the Park had to be made.

■ The Court must conclude that this is not a case in which the government official acted beyond his statutory authority. Neither is it a case in which either the statutory authority or the manner of its execution is unconstitutional. Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), established the precedent that a suit for injunctive relief may not be maintained on grounds that the Park Service is exercising dominion over property in a manner inconsistent with plaintiff's alleged property rights.

Henry Swann, Esq., District Attorney for the Second Judicial Circuit of Tennessee, has attempted to join in the suit on behalf of the State of Tennessee as a plaintiff. He asserts authority under Title 23, Chapter 28 of Tennessee Code Annotated to enforce the State's reserved rights. When at the hearing on this case the Court gave plaintiffs thirty days in which to join the State as a party, the Court had in mind at that time the Attorney General of the State to represent the State if the State desired to make application to become a party. It is doubted that the statutes relied on by District Attorney Swann give him authority to question the authority of a federal official alleged to be violating a right reserved in a state grant to the United States. Nevertheless, in light of the disposition of the case the Court will allow him to join on behalf of Tennessee.

■ The State stands in no better position than the private plaintiffs in regard to the doctrine of sovereign immunity. Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. Therefore, what has heretofore been stated as to the private plaintiffs applies to bar the State's suit for injunctive relief.

In essence the State's position is that the nature of the case is a usurpation of a state's sovereign legislative rights and that Colorado v. Toll, supra, is authority that it may maintain this action. In the *Colorado* case the lower court was reversed when it dismissed the action without examining the state's claim that it had not ceded legislative jurisdiction and that the federal government was seeking to exercise exclusive jurisdiction.

The case at bar presents no issue of federal assertion of exclusive legislative jurisdiction such as would raise questions under the United States Constitution, Article 1, Section 8, Clause 17. The 1951 deed and grant of the Tennessee Legislature passes all title and interest in the roads with reservation of a right of public use. When the Federal government regulates the use of its own property in furtherance of the purpose for which it was acquired, it does not necessarily question the right of the State to exercise legislative jurisdiction not inconsistent with the federal purpose. The federal regulation may be in derogation of the State's reserved right in the property but is not an assertion of the exclusive right to legislate such as is exercised over the District of Columbia.

In sum, the Court holds that this action is in effect a suit for injunctive relief against the United States to which the Government has not consented and which is not in either of the categories of cases that are exceptions to the rule of sovereign immunity. Defendant's motion to dismiss must be, and same hereby is, sustained.